IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BREANNA SILVER,<br><br>      PLAINTIFF,<br>v.<br><br>THE MILTON S. HERSHEY<br>MEDICAL CENTER,<br><br>      DEFENDANT. | Civil Action No.: _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT AND JURY DEMAND

Plaintiff Breanna Silver, by and through her undersigned attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

## PRELIMINARY STATEMENT

1. This is an action for an award of damages, punitive damages, and other relief on behalf of Plaintiff Breanna Silver (hereinafter "Ms. Silver" or "Plaintiff"), a former employee of The Milton S. Hershey Medical Center (hereinafter "MSHMC" or "Defendant"). Ms. Silver has been harmed by Defendant's harassment and discrimination on the basis of her race and disability, by Defendant's retaliation against her for complaining about harassment and discrimination, and by Defendant's retaliation against her for seeking reasonable accommodations of her disability, culminating in her wrongful termination on March 28, 2024.

2. This action is filed pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C § 2000(e) et seq. ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., the Pennsylvania Human

Relations Act, 43 P.S. § 951, et seq. ("PHRA") and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

## JURISDICTION

3. This Court has original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States pursuant to 28 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims alleged herein pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On September 17, 2024, Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed as a Complaint with the Pennsylvania Human Relations Commission ("PHRC"). On September 9, 2025, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice. With respect to the PHRA claims herein, it has been greater than one year since Ms. Silver dual-filed her Charge of Discrimination as a Complaint with the PHRC.

## VENUE

7. This action properly lies in the Middle District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

8. This action properly lies in the Middle District of Pennsylvania because significant activities associated with the claims alleged took place in this judicial district, Plaintiff performed her work for Defendant in this judicial district, Plaintiff was terminated in this judicial district, and the claims arose in this judicial district.

## **PARTIES**

9. Plaintiff Breanna Silver is an adult African American female citizen and resident of Harrisburg, Pennsylvania and the United States of America.

10. Ms. Silver is a qualified individual with a disability within the meaning of the ADA.

11. Ms. Silver has had her disability – lupus - for a period far in excess of six months.

12. Ms. Silver's disability affect a major bodily function and/or substantially limits one or more major life activities.

13. Defendant MSHMC is a Level 1 trauma center that provides patient-focused medical care, with a location at 500 University Drive, Hershey, Pennsylvania 17033, where Plaintiff was employed.

14. Defendant MSHMC is a part of Penn State Health, a multi-hospital health system.

15. At all relevant times, Defendant MSHMC is and has been an employer employing more than five hundred (500) employees.

16. At all relevant times, employees of Defendant MSHMC acted as agents and servants for Defendant MSHMC.

17. At all relevant times, employees of Defendant MSHMC were acting within the scope of their authority and in the course of employment under the direct control of Defendant MSHMC.

18. At all times material hereto, Defendant MSHMC acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant MSHMC and in furtherance of Defendant MSHMC's business.

19. This cause of action arose out of transactions or occurrences that took place in whole or in part in Dauphin County, Pennsylvania.

20. Defendant conducts substantial business within Dauphin County, Pennsylvania.

21. This Honorable Court has personal jurisdiction over the Defendant.

## FACTS

22. On or about December 4, 2023, Ms. Silver began her employment with MSHMC as a medical assistant.

23. During her employment with MSHMC, Ms. Silver excelled in her position and performed her duties in an excellent and dedicated manner.

24. Despite her loyalty and consistent performance, Ms. Silver was subjected to discrimination and harassment on the basis of her race and disability, retaliation for her complaints about discrimination and harassment, and retaliation for seeking reasonable accommodations of her disability.

25. Ms. Silver suffers from lupus and disclosed her condition to MSHMC, including in connection with informing MSHMC that she would need leave periodically to attend medical appointments.

26. From the beginning of her employment, Ms. Silver was subjected to a hostile work environment and severe and pervasive harassment and discrimination on the basis of her race.

27. Beginning within the first two weeks after her first day, Ms. Silver began complaining to Human Resources that she felt uncomfortable with the working environment in the office.

28. Then, Ms. Silver complained again to Human Resources in or about February 2024 regarding a hostile work environment on the basis of her race.

29. Specifically, Ms. Silver complained that Marissa Blouch, the Clinical Supervisor, would engage in discriminatory and harassing verbal conduct, including making racist "jokes" and singing songs that used the derogatory "n" word.

30. Ms. Silver was not the only one to complain about Ms. Blouch.

31. Kalina [LNU], another female African American employee, complained about Ms. Blouch's racial discrimination and harassment to Human Resources. However, Ms. Silver and Kalina's complaints were dismissed, as HR told them: "that's just Marissa" and "that's just how Marissa talks."

32. After their complaints, Defendant began to engage in a retaliatory campaign against both Kalina and Ms. Silver for their complaints of race discrimination and harassment.

33. Ms. Silver was approached and asked to write a statement alleging that Kalina had illegally recorded conversations in order to justify her termination.

34. Ms. Silver refused to write the statement.

35. Ms. Silver was then also subjected to immediate retaliation.

36. Ms. Blouch became very short and cold with Ms. Silver, refusing to even greet her.

37. In addition, Ms. Silver began to be assigned attendance penalty points for taking certain days off work.

38. However, Ms. Silver had received permission in advance from Ms. Blouch to take those days off work.

39. Ms. Silver has been diagnosed with lupus and was informed by Ms. Blouch and Chapin Huxley, Manager, that her attendance would not be penalized for any days that she took off work to attend doctor's appointments at Penn State Health or external appointments recommended by the Penn State Health doctor.

40. In addition, Ms. Silver was informed that she would not be assigned any attendance penalty points for several days during which she needed to be home with her children because the schools were closed due to snow days.

41. Ms. Silver relied on these promises, which were initially honored.

42. However, after Ms. Silver complained about race discrimination and harassment and refused to participate in Defendant's retaliatory conduct towards Kalina, Ms. Silver suddenly was assigned attendance penalty points for the exact days she was told would be excused.

43. In or about the week of March 18, 2024, Ms. Silver received a letter in the mail informing her that her employment would be terminated if she was absent again.

44. Ms. Silver questioned Defendant regarding these penalty points, especially given that she had originally been informed that she would not be penalized for taking days off to attend doctor's appointments or to care for her children while the schools were closed, as well as the fact that her coworkers who were unable to attend work for similar reasons were not penalized.

45. However, Ms. Silver was simply told: "we can pick and choose who we give points to."

46. Ms. Silver then raised her complaint with Human Resources, as she believed the attendance penalty points were a form of retaliation for her previous complaints of discrimination and harassment.

47. Human Resources stated to Ms. Silver that Human Resources would "handle it."

48. Ms. Blouch was suspended for approximately one week while Human Resources allegedly investigated the complaint of race discrimination and harassment, as yet another employee had also complained regarding Ms. Blouch's conduct.

49. While Ms. Blouch was suspended, Ms. Silver was approached by a Caucasian coworker, Christine Dean, who stated to Ms. Silver, "I know you're from Harrisburg, which is full of thugs. I'm afraid of Black people. Please don't hurt me."

50. Ms. Silver was shocked by this statement by Ms. Dean, given its overt racist nature, and also because she had not once acted aggressively towards Ms. Dean.

51. Ms. Silver reassured Ms. Dean that she would never hurt her and asked why she would believe that she would be harmed by Ms. Silver.

52. Ms. Dean responded that Trish Houser, another Caucasian coworker who held the position of preceptor and trainer, told her that Ms. Silver wanted to hurt her.

53. Ms. Silver was again shocked, as she had never acted aggressively towards Ms. Houser either, and had never voiced to Ms. Houser that she wanted to hurt Ms. Dean.

54. Ms. Silver then approached Ms. Houser to inquire as to why she stated to Ms. Dean that Ms. Silver wanted to hurt her.

55. Ms. Houser became irate by this question and complained about Ms. Silver to the manager, despite the fact that Ms. Silver's question was very reasonable given the situation.

56. However, Ms. Silver was then placed on leave on March 21, 2024 and told, "Don't come back unless we tell you to come back."

57. On March 28, 2024, while she was out on leave, Ms. Silver received a call and letter from Human Resources and was informed that she was being terminated due to her absences and for being hostile towards a coworker, referring to Ms. Houser.

58. Ms. Silver responded that she had been informed that she would be terminated if she accumulated one more absence, which she had not.

59. Ms. Silver then stated that she had not acted with hostility towards Ms. Houser and had asked her one simple question.

60. Human Resources responded that Ms. Silver "should not have asked that question."

61. Ms. Silver was also accused of lying during an interview when she was a no call/no show for four days.

62. However, Ms. Silver had been approved by Ms. Blouch to take those days off in advance.

63. Ms. Silver was then forced to provide proof of this, which she did.

64. Nonetheless, Ms. Silver was still terminated from her position as a medical assistant.

65. Ms. Silver subsequently applied for various other positions within Penn State Health.

66. However, even when she was interviewed and well-qualified for the position, she was never provided with an official offer of employment.

67. On one occasion, one of Penn State Health's laboratories informed Ms. Silver that it wanted to hire her, but that it would first have to let Ms. Blouch know about its intention to hire Ms. Silver.

68. Unsurprisingly, Ms. Silver was not provided with a final employment offer.

69. Defendant's actions throughout Ms. Silver's employment, as well as after her termination, demonstrate that Defendant sought any reason to terminate Ms. Silver in retaliation for her complaints of discrimination and harassment on the basis of her race, and then proceeded to blacklist Ms. Silver and prevent her from obtaining another position within Penn State Health in a further act of retaliation.

70. The unusually suggestive timing of Ms. Silver's termination, coupled with the harassing, discriminatory and retaliatory treated afforded to Ms. Silver during her employment, and the lack of any justifiable reason for her termination, strongly suggests that discrimination on the basis of Ms. Silver's race and disability, retaliation for Ms. Silver's complaints of discrimination and harassment, and retaliation for Ms. Silver seeking and exercising a reasonable accommodation of her disability motivated Defendant's decision to terminate Ms. Silver and decisions regarding rehiring her thereafter.

71. Given her treatment during her employment with Defendant and the circumstances surrounding her termination and attempts to secure another position after her termination, Ms. Silver was subjected to harassment and discrimination on the basis of her race and disability, retaliated against for her complaints of discrimination and harassment, and retaliated against for seeking and exercising a reasonable accommodation of a disability, culminating in her wrongful termination and Defendant's subsequent refusal to rehire her.

72. Ms. Silver has suffered and continues to suffer mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

73. Defendant and its employees acted with the intent of causing, or in reckless disregard of the probability that their actions would cause, Ms. Silver severe emotional distress.

74. Ms. Silver has suffered financial and other losses including, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit as a direct and proximate result of the actions and inactions of Defendant.

### COUNT I
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq.

75. Plaintiff Breanna Silver repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

76. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

77. In discriminating against and harassing Ms. Silver because of her race, and in retaliating against Ms. Silver for complaining about discrimination and harassment, Defendant violated Title VII.

78. Defendant's violations were intentional and willful.

79. Defendant's violations warrant the imposition of punitive damages.

80. As a direct result of the unlawful employment practices engaged in by Defendant, Plaintiff Breanna Silver has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

81. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT II
**The Americans with Disabilities Act, 42 U.S.C. § 12101, <u>et seq.</u>**

82. Plaintiff Breanna Silver repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

83. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Americans with Disabilities Act.

84. In discriminating against Ms. Silver on the basis of her disability, and in retaliating against Ms. Silver for seeking accommodation of her disability, Defendant violated the ADA.

85. Said violations were intentional and willful.

86. Said violations warrant the imposition of punitive damages.

87. As the direct and proximate result of Defendant's violation of the Americans with Disabilities Act, Plaintiff Breanna Silver has sustained loss of earnings, severe emotional and psychological distress, personal embarrassment, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

88. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT III
**Pennsylvania Human Relations Act, 43 P.S. § 951, <u>et seq.</u>**

89. Plaintiff Breanna Silver repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

11

90. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

91. In discriminating against and harassing Ms. Silver on the basis of her race and disability, and in retaliating against Ms. Silver for complaining about discrimination and harassment, and for seeking accommodation of her disabitliy, Defendant violated the Pennsylvania Human Relations Act.

92. As a direct result of the unlawful employment practices engaged in by Defendant, Plaintiff Breanna Silver has sustained loss of earnings, severe emotional and psychological distress, personal embarrassment, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

93. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## COUNT IV
## Civil Rights Act of 1866, 42 U.S.C. § 1981

94. Plaintiff Breanna Silver repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

95. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981").

96. In discriminating against and harassing Ms. Silver on the basis of her race, and in retaliating against Ms. Silver for her complaints about discrimination and harassment, Defendant violated Section 1981.

97. Defendant's violations were intentional and willful.

98. Defendant's violations warrant the imposition of punitive damages.

99. As a direct result of the unlawful employment practices engaged in by Defendant, Plaintiff Breanna Silver has sustained a loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

100. Plaintiff is suffering and will continue to suffer irreparable harm and monetary damages as a result of Defendant's actions unless and until this Court grants the relief requested herein.

## **PRAYER FOR RELIEF**

101. Plaintiff Breanna Silver repeats and incorporates by reference the allegations of all previous paragraphs as if fully set forth at length herein.

WHEREFORE, Plaintiff Breanna Silver respectfully requests that this Court enter judgment in her favor and against Defendant, and Order:

  a. Appropriate equitable relief;

  b. Defendant compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination, harassment and retaliation;

  c. Defendant pay Plaintiff punitive damages;

  d. Defendant pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

e.  Defendant pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's reasonable attorneys' fees;

f.  Plaintiff be granted any and all other remedies available pursuant to Title VII, the ADA, the PHRA, Section 1981, and/or any other applicable law; and

g.  Such other and further relief as is deemed just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues so triable.

<u>/s/ Christopher A. Macey, Jr.</u>
Christopher A. Macey, Jr., Esquire
Bell & Bell LLP
One Penn Center
1617 JFK Blvd. – Suite 1254
Philadelphia, PA  19103

*Attorneys for Plaintiff Breanna Silver*

Dated:  December 8, 2025